**DIXIE ALUMINUM PRODUCTS CO., INC.**

v.

**MITSUBISHI INTERNATIONAL CORPORATION.**

Civ. No. 2:91–cv–191–WCO.

United States District Court, N.D. Georgia, Gainesville Division.

Feb. 12, 1992.

John Randall Frost, Gainesville, Ga., for plaintiff.

Craig K. Pendergrast, Atlanta, Ga., for defendant.

## ORDER

O'KELLEY, Chief Judge.

A hearing was held in the captioned case pursuant to the court's order of November 22, 1991, for the defendant Mitsubishi International Corp. ("MIC") to show cause why the plaintiff Dixie Aluminum's ("Dixie") request for a stay of arbitration should not be granted [4–1]. The case is also submitted on MIC's motion for a more definite statement [7–1].

## GENERAL FACTUAL BACKGROUND

The dispute arises from contracts between Dixie and MIC for the sale of Japanese-manufactured steel coils by MIC to Dixie in 1987 and 1988. Since 1985, MIC and Dixie have engaged in twenty-two transactions[1] using the documentation at issue here. In each transaction, MIC and Dixie would reach an agreement concerning the price, quantity, and terms of delivery for the steel coils being purchased by Dixie. Dixie would then send a purchase order containing only those basic terms of the transaction. Before delivery of the steel under these agreements, MIC would send a confirming contract of sale to Dixie. This document is much more complete than the purchase order and contains many additional terms. One such term is the merger clause contained in paragraph 9:

> **9. ENTIRE AGREEMENT:** This writing is intended by the parties as the final, complete and exclusive expression of their agreement relating to the subject matter hereof, and supersedes any prior agreement or understanding between them. No waiver, amendment or modification of any of the provisions hereof shall be effective, unless made in writing and signed by both parties.

The caption "Contract of Sale" is printed in large type in the upper right-hand corner;

---

1. Sixteen of these contracts were performed without objection to the arbitration clause. The dispute underlying this case involves the six subsequent contracts.

at the bottom of the sheet is the following statement:

> The general terms and conditions on the reverse side hereof, including a provision of arbitration, constitute an integral part of this contract, and the rights and obligations of the parties hereto shall be governed exclusively by the terms hereof.

Paragraph 13 of MIC's contract of sale provides for binding arbitration in the event of disputes. This arbitration clause is labeled in boldface capital letters and is printed on the back of all twenty-two contracts of sale/shipping invoices received by Dixie. It states the following:

> **13. ARBITRATION:** Seller and Buyer agree that any controversy or claim arising out of or relating to this contract or the breach thereof shall be settled by arbitration in Atlanta, Georgia in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The award of the arbitrator(s) shall be final and binding upon the parties hereto and judgment of the award may be entered in any court of competent jurisdiction.

At no point did Dixie object to the arbitration clause contained in MIC's contract of sale; in fact, Dixie did not even read the language on the back of the form until October 1991.

In 1988, a dispute between Dixie and MIC arose concerning the quantity and quality of the steel being sold, and Dixie refused to make further payments on these contracts. Negotiations to resolve the dispute proved unavailing, and in October 1991, MIC filed an application for arbitration based on breach of contract.

Dixie responded to the application for arbitration, objecting for the first time to the provision contained in the contracts for sale. Dixie contends that it never agreed to submit to binding arbitration and that the alleged "contracts of sale" are merely shipment invoices and therefore are not binding on Dixie. Dixie requests this court to stay the arbitration proceedings, on the grounds that they have no written agreement in which Dixie and MIC agreed to submit to binding arbitration and that some or all of MIC's claims are time-barred.

MIC has filed a motion for a more definite statement (which is unopposed) concerning Dixie's allegations that MIC's claims are time-barred. It also responds that a written arbitration clause does not need to be signed to be enforceable, that Dixie failed to object in any way to the confirming contract, and that the arbitration clause contained in all twenty-two contracts is not a "material alteration" under section 11–2–207 of the Georgia Code.

## ANALYSIS

■ The general rule of the Federal Arbitration Act is:

> A written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract.

9 U.S.C. § 2. Under the Act, the only issues to be decided by the court on a motion to compel arbitration are (1) whether an agreement to arbitrate was made, and (2) whether the party opposing arbitration has failed to comply with the agreement. *First Citizens Municipal Corp. v. Pershing Div., Donaldson, Lufkin & Jenrette Sec. Corp.*, 546 F.Supp. 884, 887 (N.D.Ga.1982).

> The initial issue to be decided by this court, then, is whether the parties are under any contractual obligation to arbitrate. Although there is an overriding federal policy favoring arbitration, arbitration is a matter of contract, and a party cannot be required to submit a dispute to arbitration unless he has agreed to do so. Nonetheless, an agreement to arbitrate need not be signed by the party to be charged in order to be enforceable. The Federal Arbitration Act "… merely requires that the arbitration provision itself be in writing. Ordinary contract principles determine who is bound by such written provisions and

of course parties can become contractually bound absent their signatures."

*Id.* (citations omitted).

In this case, the arbitration provision was printed on the back of a document labeled "Contract of Sale" and signed by MIC but not signed by Dixie, the party resisting arbitration. Dixie claims that this document is not a contract and that it is not bound by its language. In order to determine whether the arbitration clause is binding on Dixie, "ordinary contract principles" under Georgia law must be applied.

■ First, the court finds that the confirmations sent by MIC to Dixie were contracts and that Dixie is therefore bound by the terms of those contracts, including the arbitration provisions. As the undisputed facts of this case show, in each transaction MIC sent its confirmation to Dixie, Dixie received that document and had reason to know its contents, and Dixie did not timely object to the arbitration provision contained in that document. Furthermore, that document contained a merger clause expressly providing that it represents the entire agreement between the parties.

> Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) ... unless written notice of objection to its contents is given within ten days after it is received.

O.C.G.A. § 11–2–201(2). Consequently, MIC's confirming document is the contract, and its terms, including the arbitration provision, are binding on Dixie and may not be contradicted by parol evidence. *David J. Joseph Co. v. S & M Scrap Metal Co.,* 163 Ga.App. 685, 686–87, 295 S.E.2d 860 (1982).

■ Second, even if MIC's confirming document were not the contract, the arbitration provision would still bind Dixie, as it is not a material alteration within the meaning of O.C.G.A. § 11–2–207(2)(b). As a general rule, if a party uses a printed form which contains terms additional to those agreed upon, then those additional terms become part of the contract unless

(1) "the offer expressly limits acceptance to the terms of the offer"; (2) "they materially alter it"; or (3) "notification of objection to them has already been given or is given within a reasonable time after notice of them is received." O.C.G.A. § 11–2–207(2).

■ Dixie contends that the arbitration provision in MIC's contract of sale constitutes a "material alteration." The Uniform Commercial Code Comment to section 2–207 explains that a clause "materially alters" the contract if it would "result in surprise or hardship if incorporated without express awareness by the other party." Where, as here, there are repeated opportunities for performance by either party and repeated opportunities for objection, and where no objection is made, that course of dealing is relevant to the meaning and terms of the written agreement, O.C.G.A. § 11–2–208(1), and bears on the issue of "unfair surprise." Dixie's repeated failure, over sixteen prior transactions, to object to the arbitration provision (or even to read it) does not indicate unfair surprise and therefore is not "material."

> Where a party has received twenty-four invoices with a certain type of charge expressly listed, he should not be surprised if the twenty-fifth contains the same charge....
>
> ... To prevent the clause from becoming part of the contract, [the buyer] needed only to give notice of objection within a reasonable time. As a matter of law, inclusion of such a clause in the tenth confirmation was not "unfair surprise." Therefore, the addition of the arbitration clause was not a material addition to the contract....

*Schulze & Burch Biscuit Co. v. Tree Top, Inc.,* 831 F.2d 709, 714–15 (7th Cir.1987).

Dixie claims that it will be subjected to undue hardship if it is forced to give up its right to present its case before a court and submit to arbitration. The court does not see this as hardship. *See, e.g., Trans–Aire Int'l v. Northern Adhesive Co.,* 882 F.2d 1254, 1262 (7th Cir.1989):

> [I]t is clear that the term [providing for arbitration] would impose no substantial

hardship upon the nonassenting party. True, the term deprived the party of certain rights. However, for all practical purposes, the term had little effect upon the nonassenting party's economic welfare. That is, the nonassenting party still had an opportunity to prosecute or defend its interests albeit in a different forum.

In support of its hardship argument, Dixie cites *Sasser & Co. v. Griffin,* 133 Ga. App. 83, 210 S.E.2d 34 (1974), for the proposition that a broad arbitration provision is *per se* a material alteration, in that Georgia law considers such provisions to be "against public policy and void, as an attempt to oust the courts of jurisdiction." *Id.* at 91, 210 S.E.2d 34 (citing *State Hwy. Dept. v. MacDougald Const. Co.,* 189 Ga. 490, 6 S.E.2d 570 (1939)). However, this case comes under the Federal Arbitration Act:

> Under the Federal Arbitration Statute (9 U.S.C. § 1 et seq.) a broad arbitration provision (invalid under state law) in a contract involving interstate commerce is valid, irrevocable and enforceable. The Federal Arbitration Act was intended to avoid the common law rule that an agreement between parties to settle any dispute between them by arbitration is against public policy and void as an effort to oust the courts of jurisdiction. "Where such a transaction involves commerce, within the meaning of the Federal Arbitration Statute, the state law and policy with respect thereto must yield to the paramount federal law."

*CCC Builders v. City Council of Augusta,* 237 Ga. 589, 591–92, 229 S.E.2d 349 (1976); *see also Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 225–26, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 *reh'g denied,* 483 U.S. 1056, 108 S.Ct. 31, 97 L.Ed.2d 819 (1987).

In summary, the court finds that the arbitration provision is part of the contract between MIC and Dixie and that, in any event, it does not constitute a "material alteration." Accordingly, the parties are under a contractual obligation to arbitrate. Dixie's motion to stay arbitration proceedings [4–1] is therefore denied. The matter is hereby dismissed. MIC's motion for a more particular statement [7–1] is denied as moot.

IT IS SO ORDERED.