[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 94-4984

D. C. Docket No. 94-779-CIV-FAM


KOTAM ELECTRONICS, INC.,

Plaintiff-Appellee,

versus

JBL CONSUMER PRODUCTS, INC.,

Defendant-Appellant.


Appeal from the United States District Court
for the Southern District of Florida


**(August 19, 1996)**


Before TJOFLAT, Chief Judge, KRAVITCH, HATCHETT, ANDERSON, EDMONDSON, COX, BIRCH, DUBINA, BLACK, CARNES and BARKETT, Circuit Judges.


DUBINA, Circuit Judge:

We voted to rehear this case *en banc* to determine whether the holding in <u>Cobb v. Lewis</u>, 488 F.2d 41 (5th Cir. 1974),[1] that antitrust claims are non-arbitrable, remains controlling precedent in this circuit in light of intervening decisions of the United States Supreme Court. In 1985, the Supreme Court made clear that antitrust disputes in the international context are arbitrable. <u>See</u> <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Today we hold that antitrust disputes in the domestic context are arbitrable as well.

## I.   BACKGROUND

Plaintiff-Appellee Kotam Electronics, Inc. ("Kotam") sells and distributes consumer electronic products. From approximately 1984 to 1992, Kotam entered into annual dealer and distributor contracts with Defendant-Appellant JBL Consumer Products, Inc. ("JBL"). Each of these contracts contained the following arbitration clause explicitly requiring the parties to submit antitrust claims to binding arbitration:

> 22.   GOVERNING LAW AND ARBITRATION
>
> b.   Any controversy or claim arising out of or relating to this Agreement, or the breach or validity thereof, whether at common law or under statute, <u>including without limitation claims asserting violation of the antitrust</u>

---

[1]   In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

> laws, shall be settled by final and binding arbitration in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA") in effect at the time of the execution of this Agreement.

(emphasis added).

In 1994, despite its agreement to arbitrate, Kotam filed suit in federal district court against JBL alleging price discrimination in violation of the Robinson-Patman Act, 15 U.S.C. § 13(a).[2]  In response, JBL moved to dismiss the complaint or, in the alternative, to stay the judicial proceedings pending arbitration pursuant to section 3 of the Federal Arbitration Act (FAA), 9 U.S.C. § 3.  The district court, relying on Cobb v. Lewis, 488 F.2d 41 (5th Cir. 1974), denied JBL's motion.

JBL appealed, and a divided panel of this court affirmed the district court's judgment.  See Kotam Elecs., Inc. v. JBL Consumer Products, Inc., 59 F.3d 1155 (11th Cir. 1995)(Gibson, J. dissenting).  A majority of the judges of this court in regular active service voted to rehear the case *en banc*, see Kotam Elecs., Inc. v. JBL Consumer Products, Inc., 69 F.3d 1097 (11th Cir. 1995),[3] and we now reverse the judgment of the district court.

---

[2]  There is no dispute that Kotam's single claim for price discrimination falls squarely within the terms of the parties' agreement to arbitrate "claims asserting violation of the antitrust laws."

[3]  This order vacated the panel's opinion.  See 11th Cir. R. 35-11 ("Unless otherwise expressly provided, the effect of granting a rehearing *en banc* is to vacate the panel opinion and to stay the mandate.").

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over this appeal pursuant to section 16 of the FAA, which provides that "[a]n appeal may be taken from an order refusing a stay of any action under section 3 [of the FAA]." 9 U.S.C. § 16(a)(1)(A). The district court denied JBL's motion to stay judicial proceedings pending arbitration based on its resolution of a question of law. Therefore, we review the district court's decision de novo. See Luckie v. Smith Barney, Harris Upham & Co., Inc., 999 F.2d 509, 512 (11th Cir. 1993).

## III. DISCUSSION

Kotam argues that the district court correctly held that Cobb remains controlling precedent in the Eleventh Circuit. In contrast, JBL argues that in light of intervening decisions of the Supreme Court, specifically Mitsubishi and its progeny, Cobb's holding that antitrust claims are non-arbitrable can no longer be considered controlling precedent in this circuit. We agree with JBL.

### A. *Cobb v. Lewis*

In 1974, the former Fifth Circuit held that, "as a general matter, antitrust claims are not appropriate subjects of arbitration." See Cobb, 488 F.2d at 47. Cobb involved an agreement between the franchiser of a nationwide chain of motion picture theaters and the owners of individual theaters. Id. at 43. The individual theater owners filed a class action alleging, among other things, violations of the Sherman Act, 15 U.S.C. § 1, and the Clayton Act, 15 U.S.C. § 77e. Id. at 43-44. In concluding that

4

antitrust claims are not appropriate subjects of arbitration, the Cobb court followed the lead of the Second, Eighth, and Ninth Circuits.  See Cobb, 488 F.2d at 47, relying on American Safety Equip. Corp. v. J.P. Maguire & Co., 391 F.2d 821, 825 (2nd Cir. 1968); Helfenbsin v. International Indus. Inc., 438 F.2d 1068 (8th Cir.), cert. denied, 404 U.S. 872, 92 S.Ct. 63, 30 L.Ed.2d 115 (1971); A & E Plastik Pak Co. v. Monsanto Co., 396 F.2d 710 (9th Cir. 1968).

Specifically, the Cobb panel expressly premised its holding on "three major considerations" outlined by the Second Circuit in American Safety:  (1) the important role of private litigants in enforcing the antitrust laws; (2) "the complexity of the issues and the extensiveness and diversity of the evidence antitrust cases usually involve;" and (3) "the questionable propriety of entrusting the decision of antitrust issues to commercial arbitrators, who `are frequently men drawn for their business expertise,' when `it is the business community generally that is regulated by the antitrust laws.'"  Cobb, 488 F.2d at 47 (citing American Safety, 391 F.2d at 826-27).[4]

B.   *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*

---

[4]   The American Safety court also relied on two other considerations not cited by the Cobb court: (1) that arbitration clauses might be contracts of adhesion; and (2) that the claim in American Safety was "that the *agreement itself* was an instrument of illegality."  391 F.2d at 827.  (emphasis added).  In Mitsubishi, the Supreme Court rejected the first consideration, noting that "[t]he mere appearance of an antitrust dispute does not alone warrant invalidation of the selected forum on the undemonstrated assumption that the arbitration clause is tainted."  Mitsubishi, 473 U.S. at 632, 105 S.Ct. at 3357.  While the second rationale has not been called into question, it was not relied upon by the Cobb court and does not apply under the facts of this case.

In 1985, the Supreme Court explicitly rejected the American Safety doctrine and each of the underlying considerations upon which the Cobb court relied. See Mitsubishi, 473 U.S. 614, 105 S.Ct. 3346. In Mitsubishi, the parties entered into a sales agreement containing an arbitration clause. The clause provided for arbitration of all controversies arising out of the agreement in accordance with the rules of the Japan Commercial Arbitration Association. Id. 473 U.S. at 617, 105 S.Ct. at 3349. When disputes arose among the parties, Soler resisted the arbitration of its antitrust claims on the basis of the American Safety doctrine. Id. 473 U.S. at 620-23, 105 S.Ct. at 3350-52. However, the Supreme Court explicitly rejected the American Safety considerations and held that, in the international context, antitrust claims are arbitrable.

First, the Court concluded that "[t]he importance of the private damages remedy . . . does not compel the conclusion that it may not be sought outside an American court." Mitsubishi, 473 U.S. at 635, 105 S.Ct. at 3358. The Mitsubishi Court reasoned that arbitrators are bound, as are judges, to apply the antitrust laws, and that there is no basis for assuming that arbitration will not provide an adequate mechanism for enforcement of the antitrust laws. Id. 473 U.S. at 635-37, 105 S.Ct. at 3358-60. Second, the Court dismissed the consideration that antitrust suits are "prone to complications" and are therefore ill-suited for arbitration. Id. 473 U.S. at 633, 105 S.Ct. at 3357. The Court emphasized that adaptability and access to expertise are hallmarks of arbitration

6

and noted that the "anticipated subject matter of the dispute may be taken into account when the arbitrators are appointed." Id. Third, the Court declined to assume that arbitration panels will be hostile to the constraints on business conduct that antitrust law imposes. As the Court stated, "We decline to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious, and impartial arbitrators." Id. 473 U.S. at 634, 105 S.Ct. at 3358.

It is true, as Kotam points out, that the Mitsubishi Court noted at the outset of its opinion that it found it "unnecessary to assess the legitimacy of the American Safety doctrine as applied to agreements to arbitrate arising from domestic transactions." 473 U.S. at 629, 105 S.Ct. at 3355; see id. ("we conclude that concerns of international comity . . . require that we enforce the parties' agreement, even assuming that a contrary result would be forthcoming in a domestic context"). However, we do not think that this language decides the issue currently pending before this court. While limited to the international context by its own facts, Mitsubishi nevertheless substantially weakened the decision in Cobb by dismantling all of the American Safety policy considerations underlying the former Fifth Circuit's holding in Cobb.

The American Safety doctrine, and consequently Cobb, is further undermined by Mitsubishi's emphasis on the "federal policy favoring arbitration." As the Supreme Court explained, "`the

7

preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered,' a concern which `requires that we rigorously enforce agreements to arbitrate.'" Mitsubishi, 473 U.S. at 625-26, 105 S.Ct. at 3353 (citing Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)). Moreover, the Mitsubishi Court stated that a party, having agreed to arbitrate, should be held to that agreement unless Congress has "evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Mitsubishi, 473 U.S. at 628, 105 S.Ct. at 3354-55. Finally, the Mitsubishi Court could find no evidence of Congressional intention to preclude arbitration of antitrust claims in the text or legislative history of either the Sherman Act or the FAA. See id. 473 U.S. at 628-29, 105 S.Ct. at 3355. Thus, we conclude that JBL is correct in its contention that the decision in Mitsubishi casts considerable doubt on the viability of Cobb in this circuit.

C. *Mitsubishi's Progeny.*

The Supreme Court itself has acknowledged that its rejection of the American Safety considerations in Mitsubishi has application outside the international context. Two years after the Mitsubishi decision, the Supreme Court rendered its decision in Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (hereinafter "McMahon"). In McMahon, the Supreme Court again rejected the American Safety considerations; however, it also discarded the distinction between domestic and international transactions with respect to arbitration

8

of § 10(b) of the Securities Exchange Act of 1934, and civil RICO claims. Most notably, the Supreme Court rejected the Second Circuit's holding that the American Safety doctrine was still good law, despite Mitsubishi, on the ground that Mitsubishi pertained only to international transactions. Id. 482 U.S. at 238-42, 107 S.Ct. at 2344-46. The Supreme Court concluded that "[a]lthough the holding in Mitsubishi was limited to the international context, much of its reasoning is equally applicable [to domestic civil RICO claims]." McMahon, 482 U.S. at 239, 107 S.Ct. at 2344; see also id. 482 U.S. at 232, 107 S.Ct. at 2341 (declining to limit its earlier decision in Scherk v. Alberto-Culver Co., 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), which involved the arbitrability of § 10(b) claims, to cases arising in an international setting).[5]

Furthermore, the Supreme Court has since cited Mitsubishi for the general proposition that antitrust claims are arbitrable. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28, 111 S.Ct.

---

[5] In McMahon, the Supreme Court also revisited an earlier case, Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed 168 (1953), and that Court's concerns about arbitration. The McMahon Court noted that Wilko stood for the proposition that arbitration would "weaken [a plaintiffs'] ability to recover" under the securities laws, and that the arbitration agreement in that case was unenforceable "only because arbitration was judged inadequate to enforce the statutory rights created by § 12(2) [of the Securities Act, 15 U.S.C. § 771(2)]." McMahon, 482 U.S. at 228-31, 107 S.Ct. at 2338-40. Questioning that reasoning, the Court stated "[i]t is difficult to reconcile Wilko's mistrust of the arbitral process with this Court's subsequent decisions involving the Arbitration Act." McMahon, 482 U.S. at 231-32, 107 S.Ct. at 2340 (citing Mitsubishi). Ultimately, the Court overruled Wilko in Rodriquez-De Quijas v. Shearson/American Express Inc., 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989), relying largely on McMahon and Mitsubishi.

9

1647, 1652, 114 L.Ed.2d 26 (1991) ("claims under [the Sherman Act] are appropriate for arbitration"). See also Matsushita Elecs. Indus. Co. v. Epstein, __ U.S. __, 116 S.Ct. 873, 883, 134 L.Ed.2d 6 (1996) ("As [McMahon] demonstrates, a statute conferring exclusive federal jurisdiction for a certain class of claims does not necessarily require resolution of those claims in federal court.").

*D.    Other Circuits' Treatment Of This Issue.*

Finally, we find it persuasive that since the Supreme Court's ruling in Mitsubishi, four other circuits have expressed the view that the American Safety doctrine is incompatible with the Supreme Court's intervening decisions and that domestic antitrust claims are therefore arbitrable. The Ninth Circuit found that:

> Given the Court's meticulous step-by-step disembowelment of the American Safety doctrine, this circuit will no longer follow American Safety. We hold that Mitsubishi effectively overruled American Safety and its progeny.

Nghiem v. NEC Elec., Inc., 25 F.3d 1437, 1441-42 (9th Cir.), cert. denied, __ U.S. __, 115 S.Ct. 638, 130 L.Ed.2d (1994) (citations omitted). Likewise, the Second Circuit affirmed, without opinion, a district court's holding that "the reasoning of Mitsubishi should apply with equal force to domestic claims" and that "`none of the justifications for the American Safety doctrine retain their vigor.'" Hough v. Merrill Lynch, 757 F.Supp. 283, 286 (S.D.N.Y.), aff'd without op., 946 F.2d 883 (2d Cir. 1991) (citations omitted).

The Seventh Circuit, while not explicitly deciding the issue, has stated in dicta that companies "may agree to arbitrate their antitrust disputes -- certainly so for international transactions,

10

. . . and likely so for domestic transactions." Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 250 (7th Cir. 1994), cert. denied, __ U.S. __, 116 S.Ct. 1044, 134 L.Ed.2d 191 (1996); see also Smokey Greenshaw Cotton Co., Inc. v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 785 F.2d 1282, 1282 (5th Cir. 1986) (per curiam, on petition for rehearing and suggestion for rehearing *en banc*), cert. denied, 482 U.S. 928, 107 S.Ct. 3211, 96 L.Ed.2d 698 (1987) (stating, though not in an antitrust context, that "although Mitsubishi arose in an international antitrust dispute and its holding purports to be limited to that context, we believe that its broad language may carry significance for domestic disputes as well").

## IV. CONCLUSION

In light of Mitsubishi and its progeny, as well as the persuasive authority from our sister circuits, we hold that Cobb is no longer controlling precedent in this circuit and that arbitration agreements concerning domestic antitrust claims are enforceable. Accordingly, we reverse the district court's judgment denying JBL's motion to stay judicial proceedings pending arbitration and remand this case for further proceedings consistent with this opinion.

REVERSED and REMANDED.

11