Michael A. HUNT, d/b/a Hunt's
Livestock, Plaintiff,

v.

UP NORTH PLASTICS, INC., Poly Amer-ica, Inc., and Ag–Bag International,
Ltd., Defendants.

No. Civ. 4–96–22.

United States District Court,
D. Minnesota,
Fourth Division.

Oct. 24, 1997.

Kent M. Williams and Dan Heldun, Heins, Mills & Olson, Minneapolis, MN, for plaintiff.

Frank R. Berman and Julie O'Brien, Law Office, Minneapolis, MN, for defendants Up North Plastics, Inc. and Poly America, Inc.

John D. French, Faegre & Benson, P.L.L.P., Minneapolis, MN, for defendant Ag–Bag International, Ltd.

## MEMORANDUM OPINION AND ORDER

TUNHEIM, District Judge.

Plaintiff Hunt is prosecuting this action on behalf of himself and a putative class consisting of all persons who purchased silage plastic products ("silage products") from one or more of defendants Up North Plastics, Inc. ("Up North") and Ag–Bag International Ltd. ("Ag–Bag"), beginning as early as April 1990. In his Amended Complaint, plaintiff alleges that Up North, Ag–Bag, and Poly America, Inc. ("Poly America") conspired to fix prices and allocate customers of silage plastic products in violation of federal antitrust laws.[1]

Defendants Up North and Poly America (collectively "defendants") have moved the Court to compel arbitration, to dismiss in part plaintiff's class action allegations, and for a partial stay.[2] This motion came before the Court at a hearing on September 12, 1997. For the reasons set forth below, defendants' motion is granted.

## BACKGROUND

Up North and Ag–Bag both produce and sell silage plastic products used for, among other things, the storage of livestock feed or grain.[3] Plaintiff alleges he purchased these products from one of the defendants during the relevant period.

Plaintiff filed his original Complaint on January 8, 1996. Thereafter, Up North and Poly America, moved to dismiss the Complaint or for a more definite statement pursuant to Fed.R.Civ.P. 12. On March 31, 1997, this Court granted defendants' motion for a more definite statement, ordered plaintiff to file an amended complaint, and denied defendants' motion in all other respects.

Plaintiff filed his amended complaint on April 14, 1997. The class period set forth in plaintiff's original and amended complaints is "at least" April 1990 to January 8, 1996.

On May 5, 1997, Up North and Poly America filed their first and only Answer and their Motion to Dismiss Counts II and III for lack of subject matter jurisdiction. In their Answer, Up North and Poly America included the following affirmative defense: "Plaintiff's claims against Poly–America and Up North are barred, in whole or in part, by the requirement that plaintiff pursue those claims by way of arbitration." The Answer also includes a counterclaim against plaintiff for alleged antitrust violations. Since the original complaint was filed, defendants have filed a number of other motions and conducted and answered discovery.

On June 30, 1997, Up North and Poly America filed this motion, moving the Court to (1) dismiss all class action allegations against them for the period from and after June 27, 1994 with respect to Up North and August 5, 1994 with respect to Poly America; (2) refer all claims against them from and after these dates to arbitration and dismissing or staying all such claims pending arbitration thereof, and (3) stay the portion of this action relating to said claims until an arbitration award on these claims has been rendered. Again, the portion of this motion

---

1. In a Memorandum Opinion and Order dated October 17, 1997, the Court dismissed plaintiff's Minnesota state-law claims alleging Up North and Poly America engaged in deceptive and unlawful trade practices relating to polyethylene construction film ("construction film"). Thus, the portion of the present motion that relates to these state-law claims is now moot.

2. Ag–Bag has not joined in this motion. There is no suggestion in the record that Ag–Bag included

arbitration clauses in its invoices for silage products. Thus, nothing herein shall be construed as dismissing, staying, or otherwise prejudicing plaintiff's class claims and allegations against Ag–Bag or arising from Ag–Bag's sales of silage products.

3. Plaintiff alleges Poly America sold construction film; he does not claim Poly America produced or scold silage products. Amended Complaint at ¶ 4.

that relates to construction film is now moot. *See supra* note 1.[4]

The motion is based on a arbitration clause that Up North began incorporating in all of its invoices—including invoices for silage products—after June 27, 1994. The arbitration clause, which appears on the front of each invoice for payment, provides as follows:

> ANY DISAGREEMENT ARISING OUT OF THE SALE OR USE OF THE PRODUCTS ABOVE SHALL BE SUBMITTED TO BINDING ARBITRATION HELD UNDER THE RULES THEN IN EFFECT OF THE AMERICAN ARBITRATION ASSOCIATION.

Plaintiff does not dispute that he began receiving invoices for silage products containing the arbitration clause in July 1994. It is also undisputed that plaintiff never objected to the inclusion of this provision as a term of sale. Moreover, although plaintiff may not have paid attention to the arbitration clause, he does not contend it was somehow hidden from view or unfairly inconspicuous.

## ANALYSIS

Up North and Poly America argue that this lawsuit plainly involves a "disagreement arising out of the sale" of silage products and thus, falls within the scope of the arbitration clause. Accordingly, defendants contend the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4, mandates that this Court enter an order compelling plaintiff to pursue in arbitration his claims arising on or after July 27, 1994. These defendants also point out that claims brought in arbitral fora must be prosecuted on an individual basis, and thus, this Court should dismiss the class allegations arising from Up North's sales after the aforementioned date.

Plaintiff does not dispute that the invoices at issue contain the arbitration provision. He also does not dispute that if this Court compels arbitration, that portion of this action should be stayed and the claims must be pursued on an individual basis in arbitration. Rather, plaintiff argues that this Court should not enforce the arbitration provision because 1) Up North and Poly America have waived any rights they may have to pursue arbitration; 2) antitrust violations are not subject to arbitration; 3) the arbitration clause was fraudulently induced; and 4) the arbitration clause is a contract of adhesion. The Court will address each of these arguments separately.

### A. Waiver

[redacted] The parties agree that the right to arbitrate is waivable. In the Eighth Circuit, a party waives its right to demand arbitration when 1) it has knowledge of an existing right to arbitration, 2) it undertakes conduct inconsistent with that right, and 3) the party opposing arbitration suffers prejudice. *E.g., Ritzel Comm. Inc. v. Mid-American Cellular Telephone Co.,* 989 F.2d 966, 969 (8th Cir.1993). Because Up North and Poly America obviously knew of the right to arbitrate, only the second and third elements are at issue here. Although Up North and Poly America may have acted inconsistently with the right to arbitrate by substantially participating in the litigation process prior to bringing this motion, plaintiff ultimately is unable to establish waiver because he has made no showing that defendants' conduct has prejudiced him.

[redacted] "Prejudice may result from lost evidence, duplication of efforts, use of discovery methods unavailable in arbitration, or litigation of substantial issues going to the merits." *Stifel, Nicolaus & Co., Inc. v. Freeman,* 924 F.2d 157, 159 (8th Cir.1991). However, mere delay is insufficient to constitute prejudice. *See id.* ("Delay in seeking to compel arbitration does not itself constitute prejudice."). Any doubts concerning the issue of waiver are resolved in favor of arbitration. *See, e.g., id.* at 158.

[redacted] Here, plaintiff's investment of time and money in discovery and motion practice has neither harmed him nor been wasted, since a substantial part of this litigation is non-arbitrable and must proceed in this fo-

4. Likewise, because Poly America only sold construction film, its invoices are no longer relevant to this motion.

rum.[5] While it is clear that plaintiff's counsel has encountered significant burdens and expended significant amounts of money in pursuing the class claims, counsel has not demonstrated whether or how this investment would have been different had defendants brought this motion—which relates only to a portion of the action—earlier in the litigation. In addition, several courts that have found prejudice and waiver have explicitly distinguished cases, such as this one, in which significant nonarbitrable claims are present. *See, e.g., St. Mary's Medical Ctr. of Evansville, Inc. v. Disco Aluminum Prod. Co., Inc.,* 969 F.2d 585, 589 (7th Cir.1992) (distinguishing two cases in which no waiver was found because those cases involved multiple claims, some of which were nonarbitrable and therefore justified utilization of the litigation process); *Com–Tech Assocs. v. Computer Assocs. Int'l, Inc.,* 938 F.2d 1574, 1577 (2nd Cir.1991) (finding waiver but distinguishing cases holding to the contrary because they involved numerous nonarbitrable claims).

Plaintiff has failed to articulate or quantify how he has been prejudiced by Up North's and Poly America's delay in bringing this motion. Thus, the Court rejects his waiver argument.

## B. Anti-Trust Violations and Arbitration

■ Plaintiff argues this dispute cannot fall within the scope of the arbitration agreement because Eighth Circuit law still provides that domestic antitrust claims are exempt from arbitration. *See Helfenbein v. International Indus., Inc.,* 438 F.2d 1068, 1070 (8th Cir.) (relying on the doctrine set forth in *American Safety Equip. Corp. v.*

*J.P. Maguire & Co.,* 391 F.2d 821, 827–28 (2nd Cir.1968)), *cert. denied,* 404 U.S. 872, 92 S.Ct. 63, 30 L.Ed.2d 115 (1971). As plaintiff acknowledges, however, the Supreme Court's decisions in *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 632–35, 105 S.Ct. 3346, 3356–58, 87 L.Ed.2d 444 (1985), which held a foreign antitrust dispute is arbitrable, and *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987), which held federal securities law claims are arbitrable, call into question the rationale of earlier cases exempting antitrust and other statutory claims from arbitration.[6] Moreover, a number of other circuits recently have found domestic antitrust disputes arbitrable. *See, e.g., Kotam Elect., Inc. v. JBL Consumer Prods., Inc.,* 93 F.3d 724, 728 (11th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 946, 136 L.Ed.2d 835 (1997); *Nghiem v. NEC Elec., Inc.,* 25 F.3d 1437, 1442 (9th Cir.), *cert. denied,* 513 U.S. 1044, 115 S.Ct. 638, 130 L.Ed.2d 544 (1994).

Although it is true that the Eighth Circuit has not overruled *Helfenbein* expressly or declared affirmatively that domestic antitrust claims are arbitrable, the court has strongly suggested that such claims are now subject to arbitration. In *Swensen's Ice Cream Co. v. Corsair Corp.* 942 F.2d 1307, 1310 (8th Cir.1991), the court stated, albeit in dicta, as follows:

> With respect to the antitrust claims, we agree with Swensen's that [*Helfenbein* ], which the District Court believed to be controlling in this case, may no longer be a correct statement of the law. In *Helfenbein* we held that domestic antitrust violations are not subject to arbitration. Since that time the Supreme Court has handed down two decisions [*Mitsubishi* and *Shear-*

---

5. Plaintiff also will be able to use some of the fruits of this discovery in an arbitration proceeding. *See, e.g., id.* at 159 (noting in finding no prejudice that the party opposing arbitration could use the discovery conducted in the arbitration).

6. The *American Safety* doctrine provided that antitrust claims should not subject to arbitration because of the combination of the following factors: 1) private parties play a pivotal role in aiding government enforcement of antitrust laws by means of private (court actions); 2) there is a

strong possibility that contracts which generate antitrust disputes are contracts of adhesion; 3) the complicated nature of antitrust disputes are ill-adapted to the expedited, simplified arbitral process; and 4) antitrust decisions are of national interest and too important to be lodged in arbitrators. *See Mitsubishi,* 473 U.S. at 632, 105 S.Ct. at 3356–57 (summarizing *American Safety* and expressing skepticism regarding its reasoning). The *Mitsubishi* court specifically rejected factors two and three. *See id.* at 632–33, 105 S.Ct. at 3356–57.

*son/American Express*] which may indicate that antitrust claims can be made the subject of arbitration between agreeing parties.

Moreover, research has revealed no case in this circuit since the Supreme Court decided *Mitsubishi* and *Shearson/American Express* in which antitrust claims were found to be nonarbitrable. Given the Supreme Court's lead, the Eighth Circuit's suggestion in *Swensen*'s and the current state of the law in other circuits, the Court concludes the antitrust claim in this case is arbitrable.

### C. Fraud in the Inducement

Plaintiff also contends the arbitration clause is unenforceable because it was fraudulently induced. In essence, plaintiff asserts that each sale of silage products was procured by fraudulent means because Up North was charging artificially high prices resulting from a secret conspiracy. Accordingly, purchasers of these products never "consented" to terms of the sale, including the arbitration provision.

■ Plaintiff's argument is unconvincing. This Court only has the power to refuse to submit the matter to arbitration if the claim is one of fraud in the inducement of the arbitration clause itself, not a claim that the entire contract was procured by fraud. *See, e.g., Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1805, 18 L.Ed.2d 1270 (1967) ("[I]f the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." (footnote omitted)); *Houlihan v. Offerman & Co., Inc.*, 31 F.3d 692, 695 (8th Cir.1994) ("Because Houlihan's claims of fraud in the inducement relate to the contract as a whole, they are subject to mandatory arbitration."). Here, plaintiff clearly is arguing that the arbitration clause should not be enforced be-

cause each sale, *in its entirety*, was the result of fraud. This argument against arbitration must fail.

### D. Adhesion Contract

■ Plaintiff's final argument is that the arbitration clause is unenforceable because it is an adhesion contract. This contention is likewise unpersuasive. Plaintiff cites to *American Safety* and *Mitsubishi, supra*, for the proposition that contracts giving rise to antitrust disputes are often contracts of adhesion. In fact, the *Mitsubishi* Court expressly rejected *American Safety*'s reasoning on this point, stating that such a concern is unjustified because the "mere appearance of an antitrust dispute does not alone warrant invalidation of the selected forum on the undemonstrated assumption that the arbitration clause is tainted." 473 U.S. at 632, 105 S.Ct. at 3357.

Also, there are numerous decisions recognizing the validity of arbitration and forum selection clauses in standard forms. *See, e.g., Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 541, 115 S.Ct. 2322, 2330, 132 L.Ed.2d 462 (1995) (bills of lading); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594, 111 S.Ct. 1522, 1527–28, 113 L.Ed.2d 622 (1991) (ticket attachments); *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1148 (7th Cir.) (arbitration terms provided in box containing computer), *cert. denied*, ―― U.S. ――, 118 S.Ct. 47, ―― L.Ed.2d ―― (1997).[7] The court finds no basis for concluding that the particular arbitration clause in this case—unlike similar clauses other courts have held to be valid—is unfair or unconscionable.

■ Moreover, a number of courts have held that when a purchaser has received a series of confirmatory documents containing an arbitration clause, and fails to object seasonably, the party is deemed to have consented to the clause as a term of its agreement with the seller. *See, e.g., Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 1994 WL 445618 at *2–3 (S.D.N.Y.

---

**7.** Plaintiff suggests that some of these cases are distinguishable because the documents containing the arbitration clauses at issue also informed the buyers of their right to reject the product. Plaintiff fails to cite any support for, or discuss why, this distinction alone renders the clause in this case unenforceable or unconscionable.

August 17, 1994) (finding an agreement to arbitrate where arbitration clause was contained in seller's confirmation forms and the buyer had received many of these forms over a six-year period without objecting), *aff'd*, 67 F.3d 20 (2nd Cir.1995); *Dixie Aluminum Prods. Co., Inc. v. Mitsubishi Int'l Corp.*, 785 F.Supp. 157, 160–61 (N.D.Ga.1992) (holding an arbitration clause contained in confirmations sent to buyer by seller was part of parties' "course of dealing" and therefore part of the contract after buyer had repeated opportunities to object to the clause and had failed to do so). Because plaintiff received many of the invoices containing the arbitration provision and never objected, the Court finds that he consented to arbitrate disputes arising from his purchase of silage products.

### ORDER

Accordingly, based on the above, the submissions of the parties, the arguments of counsel, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

1. The portion of Up North's and Poly America's motion relating to construction film [Docket No. 115] is **DENIED** as **MOOT**.

2. Up North's and Poly America's motion to compel arbitration, to dismiss in part plaintiff's class action allegations, and for a partial stay is [Docket No. 115] **GRANTED**.

3. All class allegations against Up North and Poly America arising out of Up North's sales of silage products from and after July 27, 1994 [Docket No. 115] are **DISMISSED**.

4. All of plaintiff's claims against Up North and Poly America arising out of Up North's sales of silage products from and after July 27, 1994 are **REFERRED** to arbitration as set forth in the arbitration provision contained in the invoices.

5. The portion of this action encompassing the claims described in paragraph 4, above, is **STAYED** until such time as an arbitration award has. been rendered on said claims.