COX, Circuit Judge, joined by TJOFLAT, Circuit Judge.

We agree with Chief Judge Hatchett that the district judge correctly refused to compel arbitration. But we disagree that the arbitration clause at issue excludes Title VII claims. We hold rather that the clause includes Title VII claims, but that (as Chief Judge Hatchett observes) it deprives the employee of any prospect for meaningful relief and is therefore unenforceable.

## 1. *Background*

"In consideration of [her] employment by" the defendant Avnet, Inc., Ellen Paladino consented to

> settlement by arbitration of any controversy or claim arising out of or relating to [her] employment or the termination of [her] employment. Arbitration shall be in accordance with the commercial rules of the American Arbitration Association before a panel of three arbitrators in or near the city where [she is] principally employed. . . . The arbitrator is authorized to award damages for breach of contract only, and shall have no authority whatsoever to make an award of other damages.

(R.-6 Ex. A.) After being terminated, Paladino sued Avnet under Title VII, alleging gender discrimination. She seeks back pay, reinstatement or front pay, and attorney's fees. Paladino refused to arbitrate the claim, and Avnet immediately moved for a stay and to compel arbitration pursuant to the Federal Arbitration Act (FAA) §§ 3, 4. *See* 9 U.S.C. §§ 3, 4 (1994). The district judge denied the motion. No opinion appears in the record.

Avnet appeals the denial of the motion to compel. This court reviews the district court's ruling de novo because it is a matter of law. *See Kotam Elecs., Inc. v. JBL Consumer Prods., Inc.*, 93 F.3d 724, 725 (11th Cir. 1996) (en banc), *cert. denied*, 117 S. Ct. 946 (1997).

### 2. *Discussion*

#### a. *Applicability of the Federal Arbitration Act*

The FAA governs Avnet's motion. The FAA's provisions concerning the validity of arbitration clauses reach to the edge of Congress's power under the Commerce Clause. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270, 115 S. Ct. 834, 838 (1995). No one disputes that Avnet is engaged in interstate commerce.

Furthermore, the appearance of the arbitration clause in an employment contract does not exempt the clause from the FAA under that Act's first section. All but one of the other circuits to have addressed the issue have held that the FAA § 1's exemption of "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce," 9 U.S.C. § 1, includes only employees actually engaged in transportation of goods in commerce. *See Cole v. Burns Int'l Security Servs.*, 105 F.3d 1465, 1470 (D.C. Cir. 1997); *Rojas v. TK Communications, Inc.*, 87 F.3d 745, 748 (5th Cir. 1996); *Asplundh Tree Expert Co.*

*v. Bates*, 71 F.3d 592, 598 (6th Cir. 1995); *Dickstein v. DuPont*, 443 F.2d 783, 785 (1st Cir. 1971); *Pietro Scalzitti Co. v. International Union of Operating Eng'rs*, 351 F.2d 576, 579-80 (7th Cir. 1965); *Signal-Stat Corp. v. Local 475, United Elec. Radio & Machine Workers*, 235 F.2d 298, 302-03 (2d Cir. 1956); *Tenney Eng'g, Inc. v. United Elec. Radio & Machine Workers, Local 437*, 207 F.2d 450, 453 (3d Cir. 1953) (en banc). This construction accords with the statute's text and history. *See Cole*, 105 F.3d at 1470-71. Although the district court may not have addressed this issue (we have no opinion in the record to tell us), the issue is presented in this case, and we join these other circuits.

According to the allegations of the complaint — the only facts we have at present — Paladino provided technical support to computer system salespeople. There is no evidence that this required her to move goods in interstate commerce. The employment contract therefore does not fall within § 1's exclusion.

b.    *Construing the Arbitration Clause*

The FAA puts arbitration clauses on even footing with all other clauses in a contract. *See Allied-Bruce Terminix Cos.*, 513 U.S. at 275, 115 S. Ct. at 840. They are therefore interpreted according to ordinary state-law rules of contract construction. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924 (1995). The parties' intent governs what claims are arbitrable, and we look to

3

the wording of the clause itself, giving effect to every provision, to determine the intent.[1] *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 59, 115 S. Ct. 1212, 1217 (1995); *Premier Ins. Co. v. Adams*, 632 So. 2d 1054, 1057 (Fla. Ct. App. 5th Dist. 1994) (contracts interpreted as whole); *Royal Oak Landing Homeowner's Ass'n, Inc. v. Pelletier*, 620 So. 2d 786, 788 (Fla. Ct. App. 4th Dist. 1993) (intent, as expressed in unambiguous contract language, controls); *Berry v. Berry*, 550 So. 2d 1125, 1126 (Fla. Ct. App. 3d Dist. 1989) ("[A] contract is ordinarily to be construed as a matter of law by giving effect to the intent of the parties as expressed by the terms of the agreement.")

Two provisions of the arbitration clause here describe arbitrable claims and available remedies. The first unambiguously includes all claims: it extends the clause to "any controversy or claim arising out of or relating to my employment or the termination of my employment." "Any" is not ambiguous, and if any claim "aris[es] out of . . . termination," it is a Title VII gender-discrimination claim. This provision makes Title VII claims arbitrable, as this circuit has held for language that is materially similar. *See Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 700

---

[1] The parties do not say what state's law applies; since Paladino was employed in Orlando, we assume that Florida law applies. These principles of contract construction are, in any event, matters of hornbook law.

n.1 (11th Cir. 1992) (Title VII claim included in "any dispute, claim or controversy that may arise between me and my firm").

The second relevant provision, however, just as plainly circumscribes the arbitrator's authority to grant relief. That provision divests the arbitrator of jurisdiction to award any relief in a Title VII action: "The arbitrator is authorized to award damages for breach of contract only, and shall have no authority whatsoever to make an award of other damages." Title VII actions are, of course, not contractual. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 49, 94 S. Ct. 1011, 1020 (1974). Thus, if an arbitrator were to award Paladino classic Title VII relief such as back pay or reinstatement, a court applying the FAA could vacate the award. *See* 9 U.S.C. § 10(a)(4); *Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250 (7th Cir. 1994) (affirming vacatur of award of damages outside the scope of the arbitration agreement).

These two provisions are not inconsistent; they should rather be read together. So read, they work hand-in-glove to make it difficult for the employee to obtain any relief. The employee must go to arbitration. Arguably, the employee can get a bare finding of liability there, but nothing more. The advantages to the drafter, Avnet, which imposed the agreement as a condition of employment, are obvious. Not only does it avoid discovery and other expenses of in-court litigation; it also is safe from

5

damages. The words are plain, and the intent behind them apparent. There is no need, therefore, to resort to any other contract construction rules.

We therefore conclude that the arbitration clause includes Title VII claims within its scope, but denies the employee the possibility of meaningful relief in an arbitration proceeding.

c.    *Enforceability of the Clause*

Federal statutory claims are generally arbitrable because arbitration, like litigation, can serve a remedial and deterrent function, and federal law favors arbitration. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28, 111 S. Ct. 1647, 1653 (1991). Title VII claims are no exception to this rule. *See Bender*, 971 F.2d at 700. But the arbitrability of such claims rests on the assumption that the arbitration clause permits relief equivalent to court remedies. *See Gilmer*, 500 U.S. at 28, 111 S. Ct. at 1653. When an arbitration clause has provisions that defeat the remedial purpose of the statute, therefore, the arbitration clause is not enforceable. *See Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1468 (D.C. Cir. 1997).

This clause defeats the statute's remedial purposes because it insulates Avnet from Title VII damages and equitable relief. *Cf. Brisentine v. Stone & Webster Eng'g Corp.*, 117 F.3d 519, 526-27 (11th Cir. 1997) (listing as one of the factors rendering a collective-bargaining arbitration clause unenforceable the arbitrator's lack of

6

authority to resolve statutory claims). Arguably, Paladino could hope for a finding of liability from the arbitrator. In that event, she would still have to repair to a judicial forum to pursue any Title VII remedy. These difficulties considered, we treat this clause as an impermissible waiver of Title VII rights. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51-52, 94 S. Ct. 1011, 1021 (1974); *Schwartz v. Florida Bd. of Regents*, 807 F.2d 901, 906 (11th Cir. 1987).

The difficulty of obtaining meaningful relief is not, moreover, the only infirmity of this clause. Because Avnet makes no promises to pay for an arbitrator, employees may be liable for at least half the hefty cost of an arbitration and must, according to the American Arbitration Association rules the clause explicitly adopts, pay steep filing fees (in this case $2000).[2] One circuit has in dicta stated that such "fee-shifting" is a per se basis for nonenforcement. *Cole*, 105 F.3d at 1484. We consider costs of this magnitude a legitimate basis for a conclusion that the clause does not comport with statutory policy.

Arbitration ordinarily brings hardships for litigants along with potential efficiency. Arbitral litigants often lack discovery, evidentiary rules, a jury, and any meaningful right to further review. In light of a strong federal policy favoring

---

[2]    Paladino's complaint does not seek a specific amount of damages; such claims incur a $2000 filing fee. AAA Commercial Arbitration Rules Fee Schedule.

arbitration, these inherent weaknesses should not make an arbitration clause unenforceable. *See Gilmer*, 500 U.S. at 30-31, 111 S. Ct. at 1654-55 (listing disadvantages of arbitration that do not prevent its use). *But see Cole*, 105 F.3d at 1482 (taking lack of discovery into account to determine enforceability). But a clause such as this one that deprives an employee of any hope of meaningful relief, while imposing high costs on the employee, undermines the policies that support Title VII. It is not enforceable.

### 3. *Conclusion*

For these reasons, we affirm the district court.

AFFIRMED.