**SEACOAST MOTORS OF SALISBURY, INC., Plaintiff,**

v.

**CHRYSLER CORPORATION, Defendant.**

**Civil Action No. 96–11695–RCL.**

United States District Court, D. Massachusetts.

April 22, 1997.

Nicholas J. DeCoulos, DeCoulos & DeCoulos, Peabody, MA, for Plaintiff.

Robert D. Cultice, Richard M. Gilbert, Goldstein & Manello, P.C., Boston, MA, for Defendant.

***MEMORANDUM AND ORDER ON CHRYSLER'S MOTION TO DISMISS, OR, ALTERNATIVELY, STAY ACTION AND COMPEL ARBITRATION (# 7)***

COLLINGS, United States Magistrate Judge.[1]

### I. INTRODUCTION

Plaintiff's complaint, filed in Essex Superior Court and removed to this Court by the defendant, seeks recovery under Massachusetts General Laws, Chapter 93B which regulates business practices between motor vehicle manufacturers, distributors and dealers. Specifically, the plaintiff operates an automobile dealership in Salisbury, Massachusetts under the name of Seacoast Motors of Salisbury, Inc. ("Seacoast") which sells Chrysler,

---

1. The within case has been referred to the undersigned United States magistrate judge for all purposes, including trial and entry of judgment, pursuant to 28 U.S.C. § 636(c).

Plymouth, Jeep and Eagle vehicles. About a year ago, Chrysler gave notice to Seacoast that it was establishing a dealership in Haverhill, Massachusetts. Seacoast maintains that the establishment of that dealership will adversely affect its business and is an unfair method of competition and an unfair and deceptive act or practice prohibited by Chapter 93B.

Chrysler has filed a motion to dismiss, or, alternatively, to compel arbitration of the dispute. There is no question but that the parties voluntarily entered into an agreement to arbitrate all disputes and that the plain language of the agreement encompasses claims such as one brought pursuant to Chapter 93B. The issue in the case is whether or not, as a matter of law, claims under Chapter 93B can be subject to arbitration even when there is an agreement to arbitrate. Seacoast maintains that claims under Chapter 93B are similar to antitrust claims which, as a matter of public policy, have been found to be nonarbitrable. *See Hunt v. Mobil Oil Corp.,* 444 F.Supp. 68, 69 (1977).

## II. STATE LAW

It is interesting to note that as originally enacted, Chapter 93B contained a provision which mandated that disputes arising under the section be arbitrated. The Supreme Judicial Court, in commenting on that statute, wrote that "[t] he statute does not make arbitration contingent on the request or consent of the parties." *See Foreign Auto Import, Inc. v. Renault Northeast, Inc.,* 367 Mass. 464, 472, 326 N.E.2d 888, 893–94 (1975). However, the Court did note that there might be a question as to whether a claim under Chapter 93B could ever be subject to arbitration, writing:

> ... [T]he plaintiff does not ask that the defendants be required to arbitrate the dispute as apparently required by statute. The defendants not only do not ask for arbitration, but argue that the statutory provision for compulsory and binding arbitration of a dispute on the relevant market

area violates the Federal anti-trust laws in several respects. We intimate no opinion on the defendants' contention.

*Foreign Auto Import, Inc.,* 367 Mass. at 472, 326 N.E.2d at 893.

In 1977, Chapter 93B was amended to eliminate the provision for mandatory arbitration; however, nothing was contained in the amendments which would either prohibit or allow arbitration of claims arising under that chapter. To the extent that a parallel can be drawn vis-a-vis arbitration as between Chapter 93B and Chapter 93A, which concerns the regulation of business practices for consumer protection, there is a statutory difference between claims brought under Chapter 93A, § 9 and § 11. Section 11 allows persons "... engaged in the conduct of any trade or commerce" who have suffered a loss to sue those who caused the loss by unfair methods of competition. These claims may be the subject of arbitration pursuant to an agreement between the parties. *Greenleaf Engineering & Construction Company, Inc. v. Teradyne, Inc.,* 15 Mass.App.Ct. 571, 574–76, 447 N.E.2d 9, 12–13 (1983); *Francis v. Marshall,* 661 F.Supp. 773, 775 (D.Mass. 1987).

However, claims under Chapter 93A, § 9 which permits persons other than those engaged in trade or commerce, i.e., consumers, to bring suit, are not subject to arbitration by reason of § 9(6) which provides that:

> Any person entitled to bring an action under this section shall not be required to initiate, pursue or exhaust any remedy established by any regulation, administrative procedure, local, state or federal law or statute or the common law in order to bring an action under this section ...

*See Hannon v. Original Gunite Aquatech Pools,* 385 Mass. 813, 826, 434 N.E.2d 611, 618–19 (1982) ("While arbitration pursuant to a contract does not fall neatly into the categories of remedies listed in G.L. c. 93A, § 9(6), we think it comprehended within either 'common law' or statutory remedies.") [2]

---

2. The question of the requirements of the Federal Arbitration Act, 9 U.S.C. § 2, was not raised in the *Hannon* case. State laws which prohibit the enforcement of agreements to arbitrate violate

the Supremacy Clause of the United States Constitution because of the Federal Arbitration Act unless the agreement falls within the "two limitations" to the Act. *Southland Corporation v. Keat-*

It is my opinion that there is no statutory ban on enforcing an arbitration agreement between the parties as to claims brought under Chapter 93B. In repealing the mandatory arbitration provision of Chapter 93B in 1977, the Legislature offered no hint that it was doing more than ending mandatory arbitration and prohibiting voluntary arbitration of any dispute under Chapter 93B. That the Legislature chose to prohibit a plaintiff bringing a claim under § 9 of Chapter 93A from being forced to arbitrate the claim but permitted enforcement of an agreement to arbitrate claims brought under § 11 of Chapter 93A convinces me that if the Legislature wanted to prohibit claims under Chapter 93B from being arbitrated, it would have said so explicitly.

### III. FEDERAL LAW

As noted, supra,[3] the Federal Arbitration Act requires arbitration agreements to be enforced. However, antitrust claims are an exception to the rule as a result of the so-called "American Safety doctrine" enunciated in the case of *American Safety Equipment Corporation v. J.P. Maguire & Co.*, 391 F.2d 821 (2d Cir.1968). In 1976, Judge Weinfeld summed up the law on this point: "It is now cardinal doctrine that the public interest in the enforcement of the antitrust laws makes antitrust claims inappropriate subjects for arbitration." *Hunt v. Mobil Oil Corporation*, 410 F.Supp. 10, 25 (S.D.N.Y.1976) citing *American Safety Equipment Corporation*, 391 F.2d 821.

Plaintiff argues that a Chapter 93B claim is so similar to an antitrust claim that the same principle should be applied. The Supreme Judicial Court acknowledged the argument in the *Foreign Auto Import* case but "intimate[d] no opinion" on the matter.

*Foreign Auto Import, Inc.*, 367 Mass. at 472, 326 N.E.2d at 893. So far as appears, no Massachusetts court has had occasion since to express an opinion on the issue.

However, the First Circuit has affirmed a district court ruling ordering claims under the federal Automobile Dealers Day in Court Act, 15 U.S.C. § 1221 *et seq.*, and the Puerto Rico Dealers' Act, 10 L.P.R.A. § 278a, to arbitration. *Mitsubishi Motors Corporation v. Soler Chrysler–Plymouth, Inc.*, 723 F.2d 155, 162–63 (1st Cir.1983), *rev'd on other grounds*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). However, it does not appear that counsel in that case were arguing that those claims were not subject to arbitration as a matter of law but rather that they did not come within the terms of the specific arbitration agreement between the parties. What is noteworthy is that the case also involved claims under the Sherman Act and the Puerto Rico Antitrust Law arising out the same set of facts, and the First Circuit, applying the "American Safety doctrine", noted that those claims were not arbitrable under United States law. *Mitsubishi Motors Corporation*, 723 F.2d at 163–64.

However, the Supreme Court reversed that holding as to international as opposed to domestic antitrust disputes, *Mitsubishi Motors Corporation*, 473 U.S. at 628–640, 105 S.Ct. at 3354–61, and in so doing, cast considerable doubt on the rationale which formed the basis of the proposition that antitrust cases are not subject to arbitration.[4] The Court wrote:

> At the outset, we confess to some skepticism of certain aspects of the American Safety doctrine. As distilled by the First Circuit, 723 F.2d, at 162, the doctrine comprises four ingredients. First, private parties play a pivotal role in aiding govern-

---

ing, 465 U.S. 1, 10–16, 104 S.Ct. 852, 858–61, 79 L.Ed.2d 1 (1984); *Mitsubishi Motors Corporation v. Soler Chrysler–Plymouth, Inc.*, 723 F.2d 155, 158 (1st Cir.1983). Neither of the limitations is applicable to either the instant case or the *Hannon* case. The result is the same regardless of whether the claim which is the subject of an arbitration agreement has been brought in federal or state court. *Id.; Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Whether a Chapter 93B claim falls within the

principle that antitrust claims are not subject to arbitration is discussed, *infra*, at part III.

**3.** *See* footnote 2, *supra*.

**4.** The Court wrote that: "[w]e find it unnecessary to assess the legitimacy of the American Safety doctrine as applied to agreements to arbitrate arising from domestic disputes." *Mitsubishi Motors Corp.*, 473 U.S. at 629, 105 S.Ct. at 3355.

mental enforcement of the antitrust laws by means of the private action for treble damages. Second, "the strong possibility that contracts which generate antitrust disputes may be contracts of adhesion militates against automatic forum determination by contract." Third, antitrust issues, prone to complication, require sophisticated legal and economic analysis, and thus are "ill-adapted to strengths of the arbitral process, i.e., expedition, minimal requirements of written rationale, simplicity, resort to basic concepts of common sense and simple equity." Finally, just as "issues of war and peace are too important to be vested in the generals, ... decisions as to antitrust regulation of business are too important to be lodged in arbitrators chosen from the business community—particularly those from a foreign community that has had no experience with or exposure to our law and values." *See American Safety*, 391 F.2d, at 826–827.

*Mitsubishi Motors Corporation*, 473 U.S. at 632, 105 S.Ct. at 3356–57. The Supreme Court found the "second concern unjustified" because "[a] party resisting arbitration of course may attack directly the validity of the agreement to arbitrate." *Id.* citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). As to the third factor, the Court further wrote that "... potential complexity should not suffice to ward off arbitration ...:" because:

[A]daptability and access to expertise are hallmarks of arbitration. The anticipated subject matter of the dispute may be taken into account when the arbitrators are appointed, and arbitral rules typically provide for the participation experts either employed by the parties or appointed by the tribunal.

*Mitsubishi Motors Corporation*, 473 U.S. at 633, 105 S.Ct. at 3357 (footnote omitted). With respect to the fourth factor, the Court:

... reject[ed] the proposition that an arbitration panel will pose too great a danger of innate hostility to the constraints on business conduct that antitrust law imposes.

*Id.* at 634, 105 S.Ct. at 3357. The Court noted that:

... arbitrators frequently are drawn from the legal as well as the business community; where the dispute has an important legal component, the parties and the arbitral body with whose assistance they have agreed to settle their dispute can be expected to select arbitrators accordingly. We decline to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious, and impartial arbitrators.

*Mitsubishi Motors Corporation*, 473 U.S. at 634, 105 S.Ct. at 3357–58 (footnote omitted).

Lastly, as to the first factor, the Court noted that it was undoubtedly true that "... the private cause of action plays a central role in enforcing this regime [of antitrust laws]" and that "[t]he he treble-damages provision wielded by private litigants is a chief tool in the antitrust enforcement scheme ... ". *Id.* at 635, 105 S.Ct. at 3358. However, the Court wrote that "[t]he importance of the private damages remedy ... does not compel the conclusion that it may not be sought outside an American court." *Id.* The reason is that:

"Notwithstanding its important incidental policing function, the treble-damages cause of action ... seeks primarily to enable an injured competitor to gain compensation for that injury ... [and] is designed primarily as a remedy."

*Id.* at 635–36, 105 S.Ct. at 3358 quoting from *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 485–86, 97 S.Ct. 690, 695–96, 50 L.Ed.2d 701 (1977).

What is especially telling about this analysis is that although the holding is confined to international arbitration, *See footnote 4, supra*, the Court's reasoning would apply equally well to domestic antitrust cases. In these circumstances, I am unwilling to expand the "American Safety doctrine" to cases brought under Chapter 93B. Applying the four factors of the doctrine as interpreted by the Supreme Court, the party resisting arbitration of a Chapter 93B claim may challenge the validity of the agreement to arbitrate on the ground that it amounts to a contract of

adhesion. Chapter 93B cases are not particularly complex. There is no basis for a finding of any "innate hostility to the constraints on business," *Mitsubishi Motors Corporation,* 473 U.S. at 634, 105 S.Ct. at 3357, that Chapter 93B sets forth. Lastly, although private actions brought under Chapter 93B, like the antitrust laws, perform an important function in curbing unfair and coercive practices in the automobile franchising industry and thereby promote competition in the industry, this function is "incidental" to the primary function which is to give an injured dealer the ability to obtain compensation for its injury. Id. at 635–36, 105 S.Ct. at 3358–59.

### IV. CONCLUSION AND ORDER

For all of the above-stated reasons, I rule that the "American Safety doctrine," whatever its current validity, does not have the effect of prohibiting the arbitration of claims brought under Chapter 93A. It is ORDERED that Chrysler's Motion to Dismiss, or, Alternatively, Stay Action and Compel Arbitration (# 7) be, and the same hereby is, ALLOWED Judgment shall enter dismissing the Complaint.