# United States Court of Appeals
## For the First Circuit

———

No. 01-1262

SEACOAST MOTORS OF SALISBURY, INC.,

Plaintiff, Appellant,

v.

DAIMLERCHRYSLER MOTORS CORPORATION,

Defendant, Appellee.

———

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

———

Before

Boudin, Chief Judge,

Coffin, Senior Circuit Judge,

and Lynch, Circuit Judge.

———

Nicholas J. Decoulos and Decoulos & Decoulos on brief for
appellant.
George W. Mykulak, Susan B. Hanmer and Hale and Dorr LLP on
brief for appellee.

———

November 8, 2001

———

BOUDIN, Chief Judge. This case has its origin in a law suit against the auto manufacturer DaimlerChrysler Motors Corporation ("DaimlerChrysler") by Seacoast Motors of Salisbury ("Seacoast"), one of its dealers. Seacoast claims that DaimlerChrysler's decision to authorize a new competing dealer near Salisbury was an arbitrary and unfair trade practice under Mass. Gen. Laws. ch. 93B, § 4(3)(l) (West 1997). The district court dismissed Seacoast's suit and ordered arbitration pursuant to a clause in Seacoast's dealership agreement that, both sides concede, covered the claim. Seacoast Motors of Salisbury, Inc. v. Chrysler Corp., 959 F. Supp. 52, 56 (D. Mass. 1997).

Seacoast appealed to this court, arguing that its chapter 93B claim sounded in antitrust and was thus not arbitrable under the so-called American Safety doctrine. See Am. Safety Equip. Corp. v. J.P. Maguire & Co., 391 F.2d 821, 827-28 (2d Cir. 1968). This court, on a ground later rejected by the Supreme Court in another case, Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 88-89 (2000), held that it lacked jurisdiction over Seacoast's appeal because the arbitrability decision was "embedded" in the underlying substantive dispute and thus interlocutory. Seacoast, 143 F.3d 626, 628-29 (1st Cir.), cert. denied, 525 U.S. 965 (1998).

Thereafter, Seacoast's claim was submitted to arbitration and DaimlerChrysler prevailed. Seacoast then repeated its objection to arbitrability in a new federal suit, brought in the same district court that had ordered arbitration, seeking to enjoin enforcement of the arbitration award. The district court once again dismissed, this time without a written opinion, and Seacoast now appeals. We review the issue de novo. Rosa v. Park West Bank & Trust Co., 214 F.3d 213, 215 (1st Cir. 2000).

At the threshold, there is uncertainty whether Seacoast has a timely cause of action in this case. DaimlerChrysler argues that Seacoast's challenge to the arbitration award is a suit to vacate the arbitration award under section 10 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10 (1994). If so, Seacoast's claim is time-barred, because it failed to serve notice of the action on DaimlerChrysler within three months of the filing of the award (its service came six days late). 9 U.S.C. § 12. Seacoast's reply is that this is not a motion to vacate under section 10 but an independent equitable action to enjoin the award not subject to section 12's time limit.

Section 10 sets forth a restricted list of grounds on which a court may entertain a motion to vacate an award; those grounds are directed primarily to fundamental errors within the

-4-

arbitration process itself (e.g., fraud, misconduct) and, read literally, they may not include the anterior claim that the arbitration contract is itself invalid. Although section 12's three-month statute of limitations is not formally limited to motions to vacate "under section 10," such motions were surely what the drafters of the FAA had principally in mind.

Of course, the existence of a valid arbitration contract embracing the dispute is the predicate for everything else. Section 10 omits any reference to disagreements on this issue as a ground for attacking an award; but this is probably because the drafters assumed that any party who resisted arbitration would do so at the outset. If so, the issue would be presented to the trial court on a motion to compel arbitration, either by a de novo motion (9 U.S.C. § 4) or in resisting a civil suit by an adversary (9 U.S.C. § 3), and resolved prior to arbitration.

Here, Seacoast brought a civil suit and did contest arbitrability; but when the district court held the matter subject to arbitration, it dismissed the case instead of staying the civil action. As already described, we in turn dismissed an immediate appeal on the ground that the judgment was not final and the Supreme Court then denied certiorari (even though it later held that such judgments are final). The question, then,

is what vehicle is available for Seacoast to get appellate review now of its original claim that the dispute was not arbitrable.

One way is to read section 10, stretching its language, to include any adequately preserved ground (e.g., public policy) on which an arbitration award might be challenged--over and above those specifically listed in section 10. Alternatively, one might imagine some form of independent equitable action. There is limited precedent for both courses, and both have difficulties.[1] But even if an independent action were permitted, section 12 might still be read as a three-month time limit on attacks on arbitration awards subject to the FAA, however framed.

These puzzles need not be resolved here and should be left for cases where they have to be decided. The procedural gap in the FAA that ensnared Seacoast has been closed by Green Tree: in the future, the party in Seacoast's position will be able to appeal the order of dismissal it suffered as a "final" order (and will at least risk a claim of waiver or law of the case if it does not). And where the district court finds that

---

[1]See Advest, Inc. v. McCarthy, 914 F.2d 6, 8-9 (1st Cir. 1990); Societe Generale de Surveillance, S.A. v. Raytheon Eur. Mgmt. & Sys. Co., 643 F.2d 863, 867-68 (1st Cir. 1981); see also 4 MacNeil, Speidel & Stipanowich, Federal Arbitration Law § 40.5 (1999); 2 id. § 23.5.

arbitration is required and enters a stay of the action before it, the arbitrability issue it decided will be adequately preserved for appellate review when the stay is ended and the district court later proceeds with enforcement.

We turn then to the merits, assuming <u>arguendo</u> that Seacoast has brought a timely challenge to the arbitrability ruling. There is no "jurisdictional" bar to our approach: the parties are diverse and there is clearly a constitutional case or controversy. <u>See</u> <u>Steel Co.</u> v. <u>Citizens for a Better Env't</u>, 523 U.S. 83, 93-95 (1998). We conclude that even assuming that Seacoast's claim is properly before the court and not out of time, Seacoast still loses.

Seacoast argues that its claim under chapter 93B sounds in antitrust and is therefore nonarbitrable under <u>American Safety</u>. The provision of chapter 93B that gives rise to the suit is typical of so-called auto dealer protection statutes passed by many states since the 1960s. <u>See generally</u> ABA Antitrust Section, Monograph No. 17, <u>Franchise Protection: Laws Against Termination and the Establishment of Additional Franchises</u> (1990). Massachusetts' version prohibits <u>inter alia</u> auto manufacturers from "arbitrarily" granting a franchise to a dealer who intends to sell the same line of cars in the same

retail market area as an existing franchisee. Mass. Gen. Laws. ch. 93B, § 4(3)(l).

To describe such a chapter 93B claim as "antitrust" is a very dubious use of language. The central aim of the antitrust laws is to protect consumers against certain abusive business practices--especially price-fixing and monopoly. See 1 Areeda & Hovenkamp, Antitrust Law ¶ 100a (2000). By contrast, dealer protection statutes, so far as they allow existing dealers to block new ones, are commonly aimed at restricting intrabrand competition (i.e., among dealers selling the same product). See Heritage Jeep-Eagle, Inc. v. Chrysler Corp., 655 N.E.2d 140, 143-44 (Mass. App. Ct. 1995). Such restrictions are not normally pro-consumer, and, where imposed by dealers themselves as a naked restraint, can readily violate the antitrust laws. United States v. Topco Assocs., 405 U.S. 596, 608 (1972).[2]

Insofar as such statutes protect against arbitrary ousters of existing dealers (e.g., by a refusal to renew a franchise), Mass. Gen. Laws. ch. 93B, § 4(3)(e), they may in

---

[2]In some situations, a supplier like DaimlerChrysler may lawfully impose such restrictions (e.g., granting exclusive territories) to protect dealer services against "free riding" or to promote dealer investment, Continental T.V., Inc. v. GTE Sylvania, Inc., 433 U.S. 36, 54-55 (1977); but here DaimlerChrysler seeks to expand dealer competition.

principle serve to protect a small business from being mistreated by a large one. But even there, the aim is often one of fairness, not promotion of competition. See Beard Motors, Inc. v. Toyota Motor Distribs., Inc., 480 N.E.2d 303, 306 (Mass. 1985). Antitrust law protects competition, not competitors. Brown Shoe Co. v. United States, 370 U.S. 294, 320 (1962). In all events, nothing in Seacoast's complaint has to do with a threatened dealer cut-off; Seacoast simply does not want to face a new competitor.

Even if we assumed arguendo that Seacoast's claim could be classified as an antitrust claim, it remains arbitrable. Seacoast argues that the Massachusetts legislature made chapter 93B claims nonarbitrable in 1977 when it deleted a provision that automatically required arbitration absent clear agreement to the contrary. The inference that the 1977 change meant to preclude arbitration is doubtful and, in any event, is irrelevant. Because of the FAA's preemptive effect, the question is solely whether federal law or policy exempts antitrust claims from the pro-arbitration presumption of the FAA. Southland Corp. v. Keating, 465 U.S. 1, 10-11 (1984).

To this, Seacoast urges a positive answer based on American Safety, in which the Second Circuit held that antitrust claims are not arbitrable because of "the pervasive public

interest in enforcement of the antitrust laws."  391 F.2d at 827-28.  This circuit once adopted American Safety, but the Supreme Court reversed, at least in the context of antitrust claims arising from international transactions.  Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 723 F.2d 155, 169 (1st Cir. 1983), rev'd, 473 U.S. 614, 629 (1985).

Since then, several circuits have abandoned the American Safety doctrine in its entirety.  See, e.g., Kotam Elecs., Inc. v. JBL Consumer Prods., Inc., 93 F.3d 724, 725-28 (11th Cir. 1996), cert. denied, 519 U.S. 1110 (1997); Nghiem v. NEC Elec., Inc., 25 F.3d 1437, 1442 (9th Cir.), cert. denied, 513 U.S. 1044 (1994).  Others have expressed doubt whether it remains good law.  See, e.g., Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 250 (7th Cir. 1994), cert. denied 516 U.S. 1159 (1996); Swensen's Ice Cream Co. v. Corsair Corp., 942 F.2d 1307, 1310 (8th Cir. 1991).  It is time to lay it to rest.

American Safety rested on the basic premise that the public interest in antitrust enforcement, the complexity of the antitrust laws, and the inadequacy of arbitral tribunals make arbitration of private antitrust claims inappropriate.  This premise has since been rejected by the Supreme Court with respect to a variety of other statutory claims no less important

or complex.  See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991) (Age Discrimination in Employment Act); Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477 (1989) (1933 Securities Act); Shearson/American Express Inc. v. McMahon, 482 U.S. 220 (1987) (1934 Securities Act and civil RICO).[3]

There is no question here of an advance waiver of antitrust claims; arbitration clauses do not eliminate substantive rights but submit them for resolution in an arbitral, rather than a judicial forum.  Mitsubishi, 473 U.S. at 628.  And while some antitrust cases do involve large issues in which the public has an interest, others are essentially business quarrels peculiar to the parties.  For those in the former category, government agencies remain free to pursue the defendant regardless of private actions, whether before courts or arbitrators.  We think time has passed by the American Safety doctrine and so hold.

Affirmed.

---

[3]In Page v. Moseley, Hallgarten, Estabrook & Weeden, Inc., 806 F.2d 291 (1st Cir. 1986), this court stated that the Supreme Court's decision in Mitsubishi did not overrule the American Safety doctrine where the context was domestic rather than international, and on this basis, Page held that civil RICO claims were not arbitrable.  Id. at 299.  But Page's holding was itself abrogated by the Supreme Court in Shearson/American Express, 482 U.S. at 225.