# United States Court of Appeals
## For the First Circuit

No. 14-1903

RODNEY FARNSWORTH, III,

Plaintiff, Appellant,

v.

TOWBOAT NANTUCKET SOUND, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Lynch, Circuit Judges.

J. Patrick Yerby, with whom Brian Keane and The Kaplan/Bond Group were on brief, for appellant.
David S. Smith, with whom Robert P. Snell, Amy Maher Rogers, Law Offices of Steven B. Stein, and Farrell McAleer & Smith LLP were on brief, for appellee.

June 17, 2015

**LYNCH**, **Circuit Judge**.  Out of this maritime case come useful lessons for those who seek to challenge the validity of arbitration clauses in contracts they have signed.

Plaintiff Rodney Farnsworth, III, entered into a salvage contract with defendant Towboat Nantucket Sound, Inc. ("TNS"), to obtain help when Farnsworth's boat went aground on rocks one night near the Weepeckett Islands in Buzzards Bay.  Farnsworth later tried to rescind the whole contract, claiming that he had signed it under duress, and disputed the sum owed to TNS.

The chronology of events is important.  The parties by agreement submitted the dispute to a panel of three arbitrators pursuant to a binding arbitration clause in the salvage contract. After the arbitration proceeding had started, Farnsworth chose to file this lawsuit, seeking a preliminary injunction against the arbitration and a declaration that the salvage contract was unenforceable because Farnsworth had entered into it under duress. His complaint drew no distinction between the obligation to arbitrate and the merits issue of what payment was owed to TNS. The district court denied the motion for injunctive relief and stayed the case pending the outcome of the arbitration.  The arbitration panel found in favor of TNS and ordered Farnsworth to pay a salvage award of $60,306.85.  The district court confirmed

that award over Farnsworth's objection.

Farnsworth appeals, arguing that the district court erred in confirming the arbitration award without first addressing his duress claim as to the arbitration clause.  We hold that, because Farnsworth did not challenge the validity of the arbitration clause specifically in his complaint (or indeed at any time before the conclusion of the arbitration proceedings),[1] the district court correctly found that the duress claim in all its aspects was for the arbitrator to resolve.  Essentially, Farnsworth did too little, too late.  We affirm.

## I.

On the evening of July 28, 2012, Farnsworth was anchoring his boat, the M/Y AURORA, in the Weepecket Island anchorage in Buzzards Bay.  The boat's depth sounder malfunctioned and Farnsworth inadvertently allowed the vessel to drift aground.

---

[1]     Even if Farnsworth had specifically challenged the validity of the arbitration clause in his verified complaint, he might still be vulnerable to the argument that he waived his right to judicial review by first consenting to and participating in arbitration.  See Opals on Ice Lingerie v. Bodylines Inc., 320 F.3d 362, 368 (2d Cir. 2003) ("[I]f a party participates in arbitration proceedings without making a timely objection to the submission of the dispute to arbitration, that party may be found to have waived its right to object to the arbitration."); ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc., 102 F.3d 677, 685 (2d Cir. 1996) (collecting cases).  However, TNS has not pressed a waiver argument, and so we do not address the issue.

Farnsworth requested a tow over his marine radio, and TNS's vessel the NORTHPOINT responded to his call. Farnsworth also made contact with the Coast Guard, which instructed him that, if he had any problems, he should "make the appropriate hail" and the Coast Guard would assist.

The merits issue in this case turns on whether the contract which ensued was a towage or a salvage contract. The difference between the two is important under maritime law because towage is compensated at a contract rate, whereas a salvor is entitled to an equitable award equal to a portion of the value of the salvaged property. 2 T.J. Schoenbaum, Admiralty and Maritime Law § 16-1 (5th ed. 2014); see also Faneuil Advisors, Inc. v. O/S Sea Hawk, 50 F.3d 88, 92 (1st Cir. 1995) (describing the law of salvage). Salvage service generally "commands a larger award," and a salvage contract creates a preferred maritime lien. Evanow v. M/V Neptune, 163 F.3d 1108, 1114 (9th Cir. 1998).[2]

The parties sharply differ over what happened in the

---

[2] "The existence of a marine peril distinguishes a salvage contract from one for towage." Evanow, 163 F.3d at 1114; accord Schoenbaum, supra, § 16-1. That is, towage is undertaken "from considerations of convenience," whereas salvage is aimed at saving a vessel that is "disabled, and in need of assistance." Evanow, 163 F.3d at 1114 (quoting The Flottbeck, 118 F. 954, 960 (9th Cir. 1902)); see also Lloyd's Syndicate 1861 v. Crosby Tugs, L.L.C., No. 13-5551, 2014 WL 3587375, at *3 (E.D. La. July 21, 2014) (collecting authorities).

- 4 -

hours after Farnsworth made contact with the NORTHPOINT. Farnsworth's complaint alleges that the NORTHPOINT crew members "attempt[ed] to create a salvage" by taking various actions designed to make the AURORA's situation appear worse than it actually was. The complaint maintains that the "AURORA was undamaged, completely buoyant, and watertight," and needed only a tow, rather than a salvage. The complaint alleges that when Farnsworth resisted TNS's efforts to create a salvage, the NORTHPOINT intentionally pulled the AURORA onto charted rocks, damaging her hull; next ordered Farnsworth to drop anchor in dangerous, unprotected waters; and then sent two large men on board the AURORA to coerce Farnsworth to sign a contract giving TNS the rights to a salvage award for towing the AURORA. The complaint alleges that Farnsworth "attempted to refuse to sign the salvage contract three times," but finally relented "because he was alone aboard the vessel with two [TNS] employees, in a remote location, without hope of assistance, at a late hour (03:30 A.M.)," and because "[t]he employees indicated that they would not leave without the signed contract."

During arbitration, John Mark Brown, one of the "large [TNS] employees" who Farnsworth says coerced him to sign the salvage contract, gave a starkly different account of the

- 5 -

encounter. Brown recounted that the AURORA was in serious danger. The area in which the AURORA was stranded, Brown said, was "littered with rocks," a danger compounded by the severe weather conditions in the area that night. Brown called Farnsworth on his cell phone and told him that, in light of those circumstances, TNS's services would not be covered under Farnsworth's towing policy; instead, Farnsworth would have to sign a "no cure, no pay" salvage contract.[3] Brown said Farnsworth initially agreed to accept salvage services during the phone conversation, but later balked at the arrangement when Brown boarded the AURORA, and then relented when Brown reminded him of his earlier agreement to a salvage contract. Brown also vigorously disputed Farnsworth's allegations that he and his partner threatened Farnsworth. Brown noted that Farnsworth had earlier spoken to the Coast Guard but "never attempted to contact the Coast Guard after we left."

The contract executed by the parties is a standard form "no cure, no pay" marine salvage agreement. Farnsworth wrote by hand the following addendum to the form contract: "Aurora was hard aground, Tow Boat prevented the Boat from going further aground,

---

[3] Under the "no cure, no pay" principle, "a prerequisite of a salvage award is that at least some of the property must be saved." Schoenbaum, supra, § 16-1 (noting that the policy underlying this principle "is that in 'pure' salvage, the reward is made out of the property that is spared from destruction").

- 6 -

and towed the boat when the Tide floated it off."[4]

The contract contains an arbitration clause:

> <u>Read Carefully -- Arbitration Provision</u> -- In the event of any dispute arising out of this Contract including any dispute regarding this salvage or concerning the reasonableness of any fees or charges due hereunder, all parties agree to binding arbitration in the United States in accordance with the Rules for Recreational and Small Commercial Vessel Salvage Arbitration of the Society of Maritime Arbitrators, Inc. Arbitrators shall be familiar with maritime salvage. Any award hereunder shall include interest, attorneys' fees and costs, and arbitration administration expenses and shall be final and binding. For the purpose of enforcement, the Award may be entered for judgment in any court of competent jurisdiction.

Farnsworth's buyers' remorse set in quickly. Approximately five days later, on August 3, 2012, Farnsworth sent a letter to TNS purporting to rescind the salvage contract, demanding that TNS preserve evidence relating to "the prospective litigation," and intimating that TNS had engaged in illegal business practices. Farnsworth sent another letter to TNS on August 11 advising TNS of his belief that TNS had no salvage claim

---

[4] Farnsworth contends that he wanted to "include handwritten language on the form to indicate his objection to signing it" but that "Brown refused to let [him] write what [he] wanted and insisted that the additional language include a reference to being 'hard aground.'"

and threatening to "fight to preserve [his] family tradition of venerable maritime activities."

He sent yet another letter on August 20, this time to TNS's counsel, again demanding the preservation of evidence and stating his belief that Dan Carpenter, a TNS representative, had engaged in "spoliation of evidence" by selectively editing the recordings of Farnsworth's radio conversations on the night of the incident.

On August 24, TNS's counsel wrote to Farnsworth with an invoice for payment of $95,546 due under the salvage contract. That amount represented TNS's estimate of a fair salvage award given the value of the salvaged property and principles of salvage law. Farnsworth did not pay the invoice.

Approximately a month later, TNS's counsel again wrote to Farnsworth, this time demanding arbitration pursuant to the arbitration clause of the salvage contract and nominating an arbitrator. Farnsworth replied on October 5, alleging that TNS had violated Massachusetts' unfair trade practices statute and yet again demanding the preservation of evidence. Although Farnsworth initially made a passing suggestion that the arbitration clause was void, he subsequently nominated, through his counsel, an arbitrator a little over a month later, in November 2012. After

- 8 -

a period of discussions, the parties agreed that "all issues arising out of the events that took place on the evening in question must be heard by arbitrators."

The parties submitted their respective claims to the arbitration panel in April 2013. Farnsworth's statement of his counterclaims included allegations that he had signed the salvage contract "under duress, . . . alone, without hope of assistance, in the middle of the night."

On May 15, 2013, Farnsworth filed a verified complaint in federal court, seeking a declaratory judgment that (1) the salvage contract was void because it was procured by duress; (2) the parties were not required to arbitrate the dispute; and (3) TNS was entitled to compensation only for towage, not for salvage. He also sought a preliminary injunction to stop the arbitration proceedings. Farnsworth's purported justification for filing the lawsuit after he had already agreed to and commenced arbitration was that, after he reviewed recordings of his radio conversations produced by TNS, he "believe[d] [TNS] withheld, edited, or deleted unfavorable conversations pertaining to towing."

On May 17, 2013, the district court denied Farnsworth's request for a preliminary injunction after a hearing and granted TNS's motion to stay the case pending the outcome of the

arbitration proceeding.  The arbitration went forward.

On November 15, 2013, the arbitration panel issued a decision rejecting Farnsworth's duress defense and finding that the salvage contract was valid.  The panel ordered Farnsworth to pay $60,306.85 (a $50,000 salvage award plus interest) to TNS and dismissed Farnsworth's counterclaims.[5]  This was a unanimous decision, with Farnsworth's arbitrator joining.

TNS then filed a motion in the district court to confirm the panel's award and dismiss Farnsworth's lawsuit.  Farnsworth filed a lengthy opposition brief, requesting that the court vacate the arbitration award because the arbitrators lacked the authority to decide the dispute.  In that brief, Farnsworth for the first time argued to the court that he had been coerced to agree to the arbitration clause specifically, as opposed to the contract as a whole.

The district court granted TNS's motion to confirm the arbitration award, rejecting Farnsworth's argument that the court, rather than the arbitrators, should have decided the duress as to arbitration issue.  The court reasoned that Farnsworth had failed

---

[5]     The arbitration panel did "not award attorneys' fees to either side as it consider[ed] that both parties needlessly engaged in a war of attrition over what should have been a relatively simple salvage dispute."

to challenge the validity of the arbitration clause specifically in his complaint, as he was required to do in order to obtain court review of his duress challenge, and that the arbitration clause in the salvage contract was sufficiently broad to encompass the dispute about the validity of the contract.[6]  This appeal followed.

## II.

A.        Legal Principles

The Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq., "reflects the fundamental principle that arbitration is a matter of contract."  Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67 (2010).  Under the FAA, courts must treat arbitration agreements in the same way as other contracts and "enforce them according to their terms."  Id.  Section 2 of the Act provides in relevant part as follows:

> A written provision in any maritime transaction or a contract . . . to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

The Supreme Court has differentiated between two types

---

[6]    Farnsworth does not dispute this latter holding on appeal.

of challenges to the validity of arbitration agreements: (1) challenges to the validity of an entire contract which contains an arbitration clause, and (2) challenges to the validity of the specific agreement to resolve the dispute through arbitration. Rent-A-Center, 561 U.S. at 70; Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444 (2006).  In a line of cases beginning with Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395 (1967), the Court has held that challenges of the first type are for the arbitrator to decide, whereas challenges of the second type are for the courts to decide, if timely and properly made.  See, e.g., Rent-A-Center, 561 U.S. at 70-71; Buckeye Check, 546 U.S. at 444-45; Prima Paint, 388 U.S. at 402-04; see also Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 376-77, 383 (1st Cir. 2011).

This rule reflects two basic principles of arbitration law.  The first is that, because "arbitration is a matter of contract[,] . . . a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (citation and internal quotation marks omitted).  The second is that, under § 2, a written arbitration agreement "is 'valid, irrevocable, and enforceable' without mention of the validity of

the contract in which it is contained."  Rent-A-Center, 561 U.S. at 70 (quoting 9 U.S.C. § 2).  The first principle means that if a party challenges the validity of the arbitration clause itself, a court must determine the challenge, "[f]or one must enter into the system somewhere."  A.S. Rau, Everything You Really Need to Know About "Separability" in Seventeen Simple Propositions, 14 Am. Rev. Int'l Arb. 1, 5 (2003).  The second principle means that, if a party fails to challenge the validity of the arbitration clause itself, the agreement to arbitrate is enforceable and any dispute about the validity of the contract as a whole goes to the arbitrator.  Rent-A-Center, 561 U.S. at 70-72.

Another way to frame this analysis is to say, as the Supreme Court has, that "an arbitration provision is severable from the remainder of the contract."  Buckeye Check, 546 U.S. at 445; see also Dialysis Access Ctr., 638 F.3d at 383.  That severability is an issue of federal law.  As the Supreme Court said in Buckeye Check, its cases establish that "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract" and that, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."  546 U.S. at 445-46.  Or, as the Court put it in

Rent-A-Center, "even where . . . the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract[,] we nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene." 561 U.S. at 71.

It is also important in this analysis to distinguish between the issue of whether a contract containing an arbitration clause is valid and the issue of whether the contract was ever actually formed. See Buckeye Check, 546 U.S. at 444 n.1. The severability doctrine addresses only the former circumstance. See Rent-A-Center, 561 U.S. at 70 n.2.[7]

B.      Application

This case does implicate the severability doctrine because, as the district court correctly held (and Farnsworth does not now dispute), the issue here is the contract's validity, not its formation. Cf. 28 Williston on Contracts § 71:8 (4th ed.) (noting that duress usually renders a contract voidable by the

---

[7]      Our case does not implicate the latter circumstance. As to that circumstance, some courts have held that, if a party argues that no contract was consummated, a court must resolve that issue, since the party is claiming that there is no agreement as to anything at all, arbitration included. See, e.g., Sphere Drake Ins. Ltd. v. All Am. Ins. Co., 256 F.3d 587, 590-91 (7th Cir. 2001) (Easterbrook, J.) (collecting cases); see also Buckeye Check, 546 U.S. at 444 n.1 (collecting cases); Rau, supra, at 14-15.

victim, rather than void, but that "in the relatively rare case where one person physically compels another to give apparent assent" there is no acceptance and hence no contract).[8] Farnsworth alleges that he was induced to sign the contract by an improper threat on the part of TNS. That duress allegation, if true, would make the contract invalid, but it would not mean that no contract was ever formed. See SBRMCOA, LLC v. Bayside Resort, Inc., 707 F.3d 267, 273-74 (3d Cir. 2013); see also Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 726 (9th Cir. 1999) (holding that duress challenge to a contract was for the arbitrator).

Farnsworth nevertheless argues that the district court erred in confirming the arbitration award for two reasons. First, he notes that he specifically challenged the arbitration clause in the salvage contract in his opposition to TNS's motion to confirm the arbitration award, and contends that the district court should have resolved that challenge under Prima Paint and its progeny. Second, he argues that his allegation of duress in the complaint logically went to the validity both of the salvage contract as a whole and of the arbitration clause contained within the salvage

---

[8]    To the extent Farnsworth does make an argument that no contract was formed because his signature was the product of "physical duress," the argument is entirely cursory and so waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

- 15 -

contract, and so the district court should have resolved the duress issue even had Farnsworth not raised the validity of the arbitration clause specifically in his opposition brief.

The second argument is a nonstarter under Supreme Court precedent. Under the Prima Paint line of cases, a party must claim that the arbitration clause itself is invalid in order to obtain court resolution of the duress issue. Farnsworth protests that this "analytical framework does not facilitate precision when analyzing a contractual defense such as physical duress . . . where the defense cannot easily be applied to some clauses at the exclusion of others." The Supreme Court has unequivocally rejected this argument, explaining that even where the claimed basis for invalidity of the contract is logically applicable to the entire contract, courts "nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene." Rent-A-Center, 561 U.S. at 71. Thus, Farnsworth's general claim of duress in his complaint -- even if it did, as he asserts, "naturally appl[y] to every clause in the Salvage Contract specifically as well as the Salvage Contract as a whole" -- was not used to support a direct challenge to the arbitration provision and so was not specific enough to permit court adjudication of the duress as to arbitration clause claim.

This brings us to Farnsworth's challenge to the validity of the arbitration clause in his opposition brief to TNS's motion to confirm the arbitration award. On appeal, Farnsworth, relying on the general principle that a party has the right to "refine and clarify general allegations made in a complaint," argues that the district court erred in "ignor[ing]" that challenge.

That general principle does not help Farnsworth here. Farnsworth had ample opportunity to refine and clarify the general allegations made in his complaint so as to comply with the severability principle. He simply failed to avail himself of it. Indeed, TNS pointed out in its opposition to Farnsworth's motion for a preliminary injunction staying the arbitration proceedings that the complaint alleged only a general challenge to the validity of the Salvage Contract, not a specific challenge to the validity of the arbitration clause. The district court then held a hearing on the motion, and there is no indication in the record that Farnsworth sought to amend his complaint or contest TNS's position regarding that proposition. Farnsworth's challenge to the validity of the arbitration clause itself came only after TNS moved to confirm the panel's award, which went against him. That was

far too late.[9]

"Under the FAA, courts may vacate an arbitrator's decision 'only in very unusual circumstances.'" Oxford Health Plans LLC v. Sutter, 133 S. Ct. 2064, 2068 (2013) (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 942 (1995)). Judicial review of binding arbitration awards is necessarily limited so as to "'maintain[] arbitration's essential virtue of resolving disputes straightaway.'" Id. (quoting Hall Street Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 588 (2008)); see also Booth v. Hume Pub., Inc., 902 F.2d 925, 932 (11th Cir. 1990) (characterizing § 9 confirmation proceedings as "summary" and noting that the FAA "expresses a presumption that arbitration

---

[9] This case is readily distinguishable from Bridge Fund Capital Corp. v. Fastbucks Franchise Corp., 622 F.3d 996 (9th Cir. 2010), the case upon which Farnsworth primarily relies. There, the plaintiff filed a lawsuit before arbitration was even contemplated, and the defendant, wishing to go to an arbitral forum instead, filed a motion to stay the lawsuit pending arbitration. The plaintiff contested the validity of the arbitration clause in motion papers opposing the defendant's motion. See id. at 999, 1001-02. The challenge to the arbitration clause thus came before arbitration started.

Because Farnsworth's challenge to the validity of the arbitration clause simply came too late, we need not decide the extent to which courts may (or must) take into account timely allegations outside the complaint in determining whether a given dispute is subject to arbitration. Cf. Escobar-Noble v. Luxury Hotels Int'l of P.R., Inc., 680 F.3d 118, 121-22 (1st Cir. 2012) (noting that a court's review "centers on the factual allegations of the complaint" (citing Dialysis Access Ctr., 638 F.3d at 378)).

awards will be confirmed").  After the arbitration panel renders its decision, upon application by one party to a court to confirm the award, "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in" 9 U.S.C. § 10 and § 11.  See 9 U.S.C. § 9 (emphasis added); accord Hall Street, 552 U.S. at 590 ("[Sections] 10 and 11 provide exclusive regimes for the review provided by the statute . . . ."); FleetBoston Fin. Corp. v. Alt, 638 F.3d 70, 78 n.8 (1st Cir. 2011) (noting that the Supreme Court has "made clear that, absent vacating or modifying an award under those provisions, an arbitral award must be enforced").  None of the circumstances listed in § 10 or § 11 is present here, and Farnsworth does not argue otherwise.  Accordingly, the district court had no proper basis on which to refuse to confirm the arbitration panel's award.  Farnsworth's belated attempt to press his duress claim in another forum by advancing allegations that he should have made when he sought to enjoin the arbitration provided no reason not to confirm.[10]  Cf.

---

[10]     Farnsworth argues in his reply brief that his challenge to the validity of the arbitration clause should have been resolved "regardless of the restrictions in section 10."  But the cases he cites in support do not support his argument.  In Seacoast Motors of Salisbury, Inc. v. DaimlerChrysler Motors Corp., 271 F.3d 6 (1st Cir. 2001), we expressly declined to decide whether a party could move to vacate under § 10 on non-enumerated grounds.  See id. at 8-9.  In MCI Telecommunications Corp. v. Exalon Industries, Inc., 138 F.3d 426 (1st Cir. 1998), we held only that the

<u>Rent-A-Center</u>, 561 U.S. at 75-76 (declining to consider challenge to validity of specific arbitration clause that had not been raised below).

III.

We <u>affirm</u> the judgment of the district court.  Costs are awarded against Farnsworth.

---

"enforcement provisions of the FAA[] do not come into play unless there is a written agreement to arbitrate."  <u>Id.</u> at 430.  There was concededly an agreement to arbitrate here; the question is whether it was valid.